IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          *

    vs.                          *     CRIMINAL NO. MJG-15-0322

HARRY CRAWFORD, et al.            *

\*        \*        \*        \*        \*        \*        \*        \*

MEMORANDUM AND ORDER RE: INDICTMENT DISMISSAL

    The Court has before it Defendant Crawford's Motion To
Dismiss Indictment [ECF No. 149], Defendant Hightower's Motion
To Dismiss Count Two Of The Pending Indictment [ECF No. 164] and
the materials submitted relating thereto.  Each Defendant has
joined in the other's dismissal motion.  The Court has held a
hearing and had the benefit of the arguments of counsel.


I.  INTRODUCTION

    The indictment at issue, the Third Superseding Indictment
(Defendants Crawford and Hightower – Extortion) [ECF No. 146]
("the Indictment") presents charges of extortion-related
conspiracy and use of interstate facilities in two Counts.

    The Indictment presents, in each Count, 28 paragraphs of
allegations that include, among other things, statements that
the defendants sent threatening electronic communications to D.
W., an individual who owed money to Defendant Hightower and that

on September 22, 2013, Defendant Hightower murdered, or aided
and abetted in the murder (fatal shooting) of D.W.

By the instant motions, Defendants seek dismissal of both
Counts.


II.   <u>INDICTMENT STANDARD</u>

A court can dismiss a defective indictment pursuant to
Federal Rule of Criminal Procedure 12(b)(3)(B).  Of course, an
indictment charge under a statute that is unconstitutional must
be dismissed.  <u>See</u> <u>United States v. Brown</u>, 715 F. Supp. 2d 688,
689-90 (E.D. Va. 2010)(citing <u>In re Civil Rights Cases</u>, 109 U.S.
3, 8-9 (1883))("An indictment is defective if it alleges a
violation of an unconstitutional statute.")

Even if a charge is based upon a constitutional statute:

> To pass constitutional muster, an indictment
> must (1) indicate the elements of the
> offense and fairly inform the defendant of
> the exact charges and (2) enable the
> defendant to plead double jeopardy in
> subsequent prosecutions for the same
> offense. <u>Sutton</u>, 961 F.2d at 479. "One of
> the principal purposes of an indictment is
> to apprise the accused of the charge or
> charges against him so he can prepare his
> defense." <u>United States v. Fogel</u>, 901 F.2d
> 23, 25 (4th Cir. 1990).

<u>United States v. Williams</u>, 152 F.3d 294, 299 (4th Cir. 1998).

Moreover, "the indictment must assert facts which in law
constitute an offense; and which, if proved, would establish

prima facie the defendant's commission of that crime." United
States v. Superior Growers Supply, Inc., 982 F.2d 173, 177 (6th
Cir. 1992).

III.  DISCUSSION

Defendants contend that both Count One and Count Two of the
Indictment should be dismissed.


A.  Count One (conspiracy)

Section 894 of Title 18 of the United States Code ("§ 894"[1])
provides:

> (a) Whoever knowingly participates in any
> way, or conspires to do so, in the use of
> any extortionate means
>
> (1) to collect or attempt to collect any
> extension of credit, or
>
> (2) to punish any person for the
> nonrepayment thereof,
>
> shall be fined under this title or
> imprisoned not more than 20 years, or both.

The Indictment charges in Count One that the defendants
violated 18 U.S.C. § 894 by having:

> knowingly participated, and conspired
> together to participate, in the use of
> extortionate  means to collect and attempt
> to collect an extension of credit and to

---

[1]    All "§" references herein are to Title 18 of the United
States Code unless otherwise indicated.

punish a person, that is, D.W., for the non-
repayment of an extension of credit.

Defendants contend that § 894 is unconstitutional on its
face and, if not, then unconstitutional as applied to these
defendants whose activities were purely local in nature.

In 1971, the Supreme Court held that § 894 was
constitutional.  Perez v. United States, 402 U.S. 146 (1971).
The Supreme Court did not, as Defendants contend, effectively
overrule Perez in United States v. Lopez, 514 U.S. 549 (1995).
In Lopez, the Court held that possession of a gun in a local
school zone was not economic activity that substantially
affected interstate commerce.  However, the Lopez court included
Perez in a list of decisions commented favorably upon. Id. at
558-60 ("[W]e have upheld a wide variety of congressional Acts
regulating intrastate economic activity where we have concluded
that the activity substantially affected interstate commerce.
Examples include . . . intrastate extortionate credit
transactions, Perez, supra.").

The fact that the defendants and their alleged crimes were
local in nature, does not render the application to them of §
894 unconstitutional.  In United States v. Bruce, 405 F.3d 145
(3d Cir. 2005), a prosecution under § 894, the defendants
contended that the statute was unconstitutional as applied

because they were not loan sharks or members of organized crime

and the drug transaction and beating at issue were purely local

in nature.  The Third Circuit found the argument unpersuasive,

saying:

> Although Congress had the links between
> organized crime and loan sharks in mind when
> it passed Section 894, the statute does not
> make the extortionate collection of a debt
> illegal only in cases of known "loan sharks"
> or members of organized crime.  Instead,
> "[t]he term 'creditor,' with reference to
> any given extension of credit, refers to any
> person making that extension of credit, or
> to any person claiming by, under, or through
> any person making that extension of credit."
> 18 U.S.C. § 891(2).  Under this definition,
> the statute will reach individuals such as
> [the defendants], who act solely in an
> intrastate context and who are not members
> of organized crime or loan sharks in the
> traditional sense.  "Where the class of
> activities is regulated, and that class is
> within the reach of federal power, the
> courts have no power 'to excise, as trivial,
> individual instances' of the class." The
> statute is constitutional as applied to [the
> defendants].

Id. at 148-49.

The Court finds the rationale of the Third Circuit

persuasive and, in the absence of Fourth Circuit authority, will

follow it.

Count One will not be dismissed.

B. <u>Count Two (Use of Interstate Facilities for Extortion)</u>

The charges in Count Two of the Indictment are brought under §
1952(a)(2) and (3) that provides, in pertinent part:

> (a) Whoever . . . uses . . . any facility
> in interstate . . .  commerce, with intent
> to:
> *   *   *
> (2) commit any crime of violence to further
> any unlawful activity; or
>
> (3) otherwise . . . carry on, or facilitate
> . . . carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to
> perform:
>
> (A) an act described in paragraph [(2)]
> shall be [subject to a sentence of
> imprisonment up to 20 years or life if death
> results], or
>
> (B) an act described in paragraph [(3)]
> shall be [subject to a sentence of
> imprisonment of up to 5 years].

The Indictment charges in Count Two that the Defendants

> did knowingly use and cause the use of a
> facility in interstate commerce, that is,
> cellular telephones and electronic mail,
> with the intent to
>
> a.   to commit a crime of violence to
> further any unlawful activity, and
>
> b.   to commit any act to carry on, and
> facilitate the promotion, management,
> establishment, and carrying on of any
> unlawful activity,

said unlawful activity being extortion in violation of the laws of the United States and the State of Maryland, and thereafter performed and attempted to perform:

a.   any act to carry on, and facilitate the promotion, management, establishment, and carrying on, of any unlawful activity; and

b.   a crime of violence to further the unlawful activity, and the death of D.W. resulted.

Stated succinctly, Count Two requires the Government to prove:

- The use of a facility (cell phone and/or email) in interstate commerce (hereafter referred to as an "IC Facility") with the intent to commit or carry on extortion, and,

- Thereafter, performing or attempting to perform either:

   o A subsequent act to carry on, facilitate etc. the extortionate activity and/or

   o A crime of violence to further the extortionate activity, and

- If they committed a crime of violence to further the extortionate activity, that the death of D.W. resulted.

Accordingly, Count Two has three aspects:

First, it charges the basic offense, i.e. the use of an IC Facility with the intent to commit or carry on extortion followed by performing or attempting to perform any subsequent unlawful activity to carry on, facilitate, etc., the

extortionate activity.  The maximum penalty for the basic offense is five years of imprisonment.

Second, it charges that the subsequent unlawful activity to carry on, facilitate, etc., the extortionate activity was a crime of violence.  If proven, the maximum penalty would be increased to 20 years of imprisonment.

Third, it charges that the crime of violence resulted in the death of D.W.  If proven, the maximum penalty would be increased to life imprisonment.

Defendants seek dismissal of Count Two in whole or part, presenting issues regarding:

- The adequacy of the allegations.

- The use of a facility in interstate commerce.

- The intent to commit or carry on extortion.

- A crime of violence.

- The sentence enhancement.

These issues shall be addressed in turn.


1.  Adequacy of Allegations

Defendants contend that the Indictment does not adequately apprise them of the charges against them so they can prepare their respective defenses.  The Court does not agree.

The Indictment presents a rather clear factual statement of what the Government contends that it can prove that the defendants did and cites to the statutes which they are alleged to have violated.  Specifically, the Indictment quotes from text messages and emails the Defendants allegedly used to extort D.W.—the "unlawful act" required by the statute, and it provides details of D.W.'s murder—the alleged "crime of violence" under § 1952(a).  Thus, the Indictment does not rely on the generic statutory terms alone.  To the extent that the Indictment does not spell out, in detail, the theories (factual and legal) that the Government will present at trial, the Court finds no constitutional infirmity.

The Defendants cite to Russell v. United States, 369 U.S. 749 (1962), to support their arguments that the indictment is insufficient.  The Supreme Court in Russell found that an indictment charging individuals with the crime of refusing to answer certain questions before a congressional subcommittee was unconstitutionally defective because the grand jury did not identify the subcommittee's subject of inquiry. Id. at 752. This was a major flaw because to be convicted under the criminal statute, 2 U.S.C. § 192, an individual must have refused to answer a question related to the subject of investigation, which the Government was obligated to prove. Id. at 755.  The Court called identification of the subject of the hearing "central to

every prosecution under the statute." Id. at 764.  The Russell

Court held that, because it is a necessary ingredient to

criminality under the statute, the grand jury indictment must

also state the subject of the congressional investigation at

issue.  Id. at 772.  Unlike in Russell, the Indictment here

included enough facts to answer the central questions needed for

prosecution under the statute and gave specific facts to define

generic terms in the statute.  Defendants were placed on

adequate notice of the charges against them.


### 2.   Facility in Interstate Commerce

The Indictment does not expressly state that the cell phone

calls and electronic communications on which the charges are

based were between locations in different states.  Therefore,

Defendants contend, the Indictment fails to allege the use of

facilities in interstate commerce, an essential element of the

charged crime.

In United States v. LeFaivre, 507 F.2d 1288 (4th Cir.

1974), the Fourth Circuit held that the defendant had used

facilities in interstate commerce every time he deposited or

cashed an out of state check that had crossed state lines.

If, as Defendants contend, to prove use of a facility in

interstate commerce, it were necessary that individual text

messages or electronic messages cross state lines, the question

would be whether the indictment presented such an allegation.
In that circumstance, it would be necessary to decide whether,
in the present context, an allegation of an electronic
communication would fairly indicate a claim that the message
likely, if not virtually inevitably, was electronically
transmitted through facilities outside of Maryland, e.g., a data
center of an Internet Service Provider such as Google.  Of
course, on this assumption the Government may have to present
evidence that the routing of a communication resulted in a
crossing of state lines.

In any event it appears that Defendants' contentions based
on LeFaivre have been undercut by more recent decisions.

In United States v. Nader, 524 F.3d 713 (9th Cir. 2008),
the defendants contended that they did not violate 18 U.S.C. §
1952(a) because the Government did not prove that the telephone
calls on which the case was based crossed state lines.  The
Ninth Circuit stated

> Under [Defendants'] interpretation, the
> facility at issue must actually be used in
> interstate commerce, so the phrase "in
> interstate or foreign commerce" in the
> Travel Act must modify the verb "uses," not
> the noun "facility." But a common sense
> reading of the plain language of the Travel
> Act shows that it does not. In the predicate
> "uses the mail or any facility in interstate
> or foreign commerce," the prepositional
> phrase "in interstate or foreign commerce"
> modifies the noun "facility," not the verb
> "uses." Congress placed the phrase next to

the word "facility," which strongly supports
the conclusion that the phrase modifies that
word. No court has held that the phrase "in
interstate or foreign commerce" modifies
"uses." Even the Sixth Circuit, which held
that the intrastate use of the mail cannot
support a violation of the Travel Act, based
its holding on other aspects of the statute.
See United States v. Barry, 888 F.2d 1092,
1095 (6th Cir. 1989). The plain language of
the statute is unambiguous. The facility
itself, not its use, must be in interstate
commerce.

The weight of authority from other circuits
supports this reading.

United States v. Nader, 542 F.3d 713, 717–18 (9th Cir. 2008).

The Court finds this rationale persuasive and not

contradicted by any authority cited by Defendants.

The Indictment adequately alleged the use of facilities in

interstate commerce.

### 3. The Intent to Commit Extortion

The Indictment charges that the Defendants used IC

Facilities to commit or with the intent to commit extortion.

The term "extortion" is used in the Indictment with reference to

Maryland Code, Criminal Law, Subtitle 3 Article 7, Section 3-

701. That statute defines extortion as including obtaining

money "from another person with the person's consent, if the

consent is induced by wrongful use of actual or threatened force or violence."[2]

The Indictment alleges specific facts that, if proven, would establish the requisite intent to commit extortion, that is, the intent to obtain money from D.W. by force.

Moreover, the Indictment includes factual allegations that would present a _prima facie_ showing that Defendant Hightower actually did obtain money from D.W. in the course of the alleged extortionate activity.  These are the allegation in ¶ 7 that by May 20, 2013, the loan was not less than $19,000.00 and the allegation in ¶ 16 that on or about August 3, 2013, Crawford sent a message stating that D. W. owed "12k," indicating that partial payment had been obtained.

### 4.   The Maximum Sentence Enhancement

There would be an enhancement of the maximum sentence if, after the use of IC Facilities with the intent to commit extortion, a defendant committed any crime of violence to facilitate, etc., the extortion.

In Count Two, the Indictment charges that after the alleged use of IC Facilities, the Defendants murdered or aided and abetted the murder of the victim by shooting.

---

2      _Compare_ 18 U.S.C. § 1951(b)(2).

Defendants contend that murder is not a crime of violence and that the indictment does not allege facts that present a prima facie case that the alleged murder was committed or attempted in furtherance of the charged extortion.

a.  Crime of Violence

Defendants contend that the crime of murder is not a crime of violence.

Title 18, Section 16 of the United States Code defines "crime of violence" for purposes of Section 1952 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Indictment charges, as the alleged crime of violence, that Hightower "murdered or aided and abetted in the murder of D.W., who was shot while in the living room area of his home, by an assailant who fired shots multiple times through the front window." ¶ 27.  The Indictment sets forth, in detail, the commission of murder in the first degree under Maryland law. In Maryland, murder in the first degree is: ("(1) a deliberate, premeditated, and willful killing; (2) committed by lying in

wait; (3) committed by poison; or (4) committed in the perpetration of or an attempt to perpetrate [certain enumerated felonies]." Md. Code Ann., Crim. Law § 2-201 (2013); see also Faulcon v. State, 126 A.2d 858, 862 (1956).

There is no doubt that the murder here at issue was a crime committed by the use of violence; the Indictment alleges that D.W. was shot multiple times through the window of his home at a specified time.   However, the parties agree that the Court must not base the status of the crime on the actual facts but instead use a categorical approach.[4]  A categorical approach requires "focusing on the elements of the statute of conviction rather than the conduct underlying the offense." United States v. Avila, 770 F.3d 1100, 1104 (4th Cir. 2014).

Under Section 16(a), this Court must

determine whether the conduct criminalized by the [homicide] statute, including the most innocent conduct, qualifies as a 'crime of violence.' United States v. Royal, 731 F.3d 333, 341–42 (4th Cir. 2013). If any one of the available means of violating the statute is non-violent, under the categorical approach the offense is not a crime of violence within the meaning of the force clause irrespective of the defendant's actual conduct.

---

[4]    The Court observes that, in sentencing a defendant, the issue is whether a prior conviction for the crime of murder establishes that the defendant committed a crime of violence and not whether proven acts establish that violence was used to commit the murder.

United States v. Naughton, 621 F. App'x 170, 177–78 (4th Cir.

2015), cert. denied, 136 S. Ct. 1393, 194 L. Ed. 2d 372 (2016).

The use of physical force as defined by the Supreme Court in

this context is not a required element of the crime of murder,

since murder can be accomplished by poison, so § 16(a) is

inapplicable.

However, under § 16(b), the Court must determine whether

first degree murder is a felony that, by its nature, involves a

substantial risk that physical force against the person of

another may be used in the course of committing the offense.  In

Leocal v. Ashcroft, the Supreme Court clarified:

> [Section 16(b)] relates not to the general conduct or
> to the possibility that harm will result from a
> person's conduct, but to the risk that the use of
> physical force against another might be required in
> committing a crime. The classic example is burglary.

543 U.S. 1, 2 (2004).

The Court recognizes that the Defendants have presented an

issue not definitively addressed by existing precedent.

However, as stated by the Government[6] without refutation by

---

6   And with support from isolated statements made in Supreme
Court decisions. E.g., James v. United States, 550 U.S. 192, 208
(2007), overruled by Johnson v. United States, 135 S. Ct. 2551
(2015) (referring to murder as a "prototypically violent
crime"); see also Benjamin v. Bureau of Customs, 383 F. Supp. 2d
344, 347 (D. Conn. 2005) ("While the [second degree
manslaughter] statute does not require the use of force, conduct
carried out with the intent to cause serious physical injury
carries with it a substantial risk that force will be used to

Defendants, every court that has addressed the matter has held that murder is, categorically, a crime of violence.  The Court finds no reason to be the first to do so.  See United States v. Moreno-Aguilar, No. RWT 13-CR-0496, 2016 WL 4089563, at *5 (D. Md. Aug. 2, 2016)(concluding that to say "murder is not a crime of violence under the force clause of § 924(c) [a statute almost identical to § 16] strains common sense").

The Court finds most sound the conclusion that murder is, categorically, a crime of violence and predicts that, when confronted with the issue, the United States Court of Appeals for the Fourth Circuit will so hold.

Of course, Defendants have preserved the issue for appellate review should there be a conviction and a sentence enhancement based upon the determination that the alleged murder was a crime of violence as that term is used in § 1952(a)(2).[8]

---

accomplish the intended goal.").

[8]    For example, Defendants contest the constitutionality of § 16(b), the residual clause, following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), striking down a similar clause in the Armed Career Criminal Act. Since Johnson, other circuits have held that the residual clause of § 16(b) is also unconstitutionally vague.  See Shuti v. Lynch, --- F.3d ---, No. 15-3835. 2016 WL 3632539 (6th Cir. July 7, 2016);   Dimaya v. Lynch, 803 F.3d 1110,1112 (9th Cir. 2015); United States v. Vivas-Ceja, 808 F.3d 719, 720 (7th Cir. 2015).

b.   <u>In Furtherance of Extortion</u>

To establish the "death enhancement" of § 1952(a)(3)(B) the Government must prove that the charged murder was committed or attempted to further the alleged extortion.

The Defendants contend that, since an essential element of extortion is to obtain money from D.W. with D.W.'s consent, his murder could not be in furtherance of the extortion offense.  In brief, once murdered, D.W. could no longer consent to any payment.

The hypothetical examples presented in the Government's Response do not address the defense contentions.  If, as in a Government hypothetical, a defendant had killed D.W and then taken money from his pocket or taken a potted geranium, those thefts would not be elements of the crime of extortion.  And, a defendant who had two debtors and killed the first could, in fact, be found to have committed the first murder in furtherance of extortion by engendering fear in the second debtor; whereas, killing the second debtor would, as with the murder of D.W., not result in getting any voluntary payment from the second debtor.

At the motion hearing, Government counsel argued that murdering D.W. for nonpayment of the debt can be found to be part of the extortion of D.W.  Government counsel also contended that since Hightower spoke with others about D.W.'s nonpayment,

there could have been a reputational purpose for the murder that made it in furtherance of an extortionate scheme.

There appear to be significant issues presented regarding the ability of the Government to prove that the murder of D.W. was in furtherance of the charged extortionate scheme for purposes of § 1952(a)(2)(B).  However, in any event, evidence of the murder and any Defendants' participation will be relevant to the issue of whether, as charged in Count 1, Defendants participated or conspired in the use of extortionate means to punish D.W. for the nonpayment of his debt. 18 U.S.C. § 894(a)(2).  Also, in regard to sentencing, a defendant's responsibility for the murder of D.W. could be relevant even if not a basis for an increase of the maximum possible sentence.[9]

Under the circumstances presented, the Court will not dismiss the Indictment's sentence enhancement charges in Count Two pursuant to § 1952(a)(3)(B).  However, the Court will address issues regarding the adequacy of the Government's proof in light of the evidence presented at trial.

---

[9]    In the sentencing context that finding would be made by the Court.

IV.   <u>CONCLUSION</u>

For the foregoing reasons:

    1. Defendant Crawford's Motion To Dismiss Indictment [ECF No. 149] is DENIED.

    2. Defendant Hightower's Motion To Dismiss Count Two Of The Pending Indictment [ECF No. 164] is DENIED.

SO ORDERED, this <u>Wednesday, September 7, 2016</u>.

                  _____/s/_____
                      Marvin J. Garbis
            United States District Judge